IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIFENG HOU, | : |
|       Plaintiff, | : |
| v. | :   Civil No. 2:19-cv-02136-JMG |
| VOYA INSURANCE AND ANNUITY COMPANY, *et al.*, | : |
|       Defendants. | : |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                December 15, 2021

## I.   OVERVIEW

Plaintiff brings this suit under Title VII of the Civil Rights Act of 1964 ("Title VII") and under the Pennsylvania Human Relations Act ("PHRA") claiming Defendants discriminated against her because of her sex. Specifically, Plaintiff claims she was subjected to a hostile work environment and then retaliation because she resisted and complained about this work environment.

Defendants deny Plaintiff's claims and argue that Plaintiff was terminated only because of her poor performance record. After the close of discovery, Defendants filed this motion for summary judgment, asking the Court to enter summary judgment against Plaintiff on each of her claims. For the reasons that follow, the Court grants Defendants' motion.

## II.   FACTUAL BACKGROUND

### a.   Allegations

Plaintiff began working for Voya Financial in October 2013. Defs.' Statement of Undisputed Material Facts, ECF No. 81-2 ("DSUF"), ¶ 35; Pl.'s Resp. Defs.' Statement of

Undisputed Facts, ECF No. 85-1 ("PSDF"), ¶ 35. She believes she had a good relationship with her first manager. PSDF ¶ 37. Indeed, Plaintiff's first manager gave her a generally positive review for her first year's performance, rating Plaintiff as "mostly meets expectations" and "fully meets expectations" in most of her functions and recommending her for a raise. DSUF ¶ 37; PSDF ¶ 37. But Plaintiff's manager also noted that "there were a couple of incidences where the timeliness of posting entries was an issue" during Plaintiff's first year.

In 2015, Plaintiff came under the management of Defendant Wawrzynek. Throughout 2015, the two maintained a positive working relationship. PSDF ¶ 40. Indeed, like her first manager, Defendant Wawrzynek issued Plaintiff a positive review at the end of the year. *Id.* But Defendant Wawrzynek's review was slightly more critical than his predecessor's had been—he rated Plaintiff only as "mostly meets expectations" and noted that she had to "be reminded to complete journal entries, which lead [sic] to missed deadlines." Defs.' Br. Supp. Mot. Summ. J., ECF No. 81-1 ("Defs.' Br."), Ex. 20.

Plaintiff alleges, however, that Defendant Wawrzynek began making romantic overtures towards her near the end of 2015. First, Defendant Wawrzynek invited her to join him for Thanksgiving dinner and then Christmas dinner. DSUF ¶¶ 67–69. Plaintiff alleges Defendant Wawrzynek made at least one of these invitations while standing so close to Plaintiff that she could feel his breath in her ear, feel his body heat, and smell his chewing gum. *See* Pl.'s Mem. Law Opp. Defs.' Mot. Summ. J., ECF No. 85 ("Pl.'s Br."), at 4. Plaintiff felt these invitations had romantic undertones and declined them. *Id.*

A month later, Defendant Wawrzynek asked his team to come into the office to work on Martin Luther King Jr. Day even though the office would be closed for the holiday. Pl.'s Br., Ex. L. Plaintiff agreed to come in. *Id.* A security badge report from that MLK day suggests that

Plaintiff's teammates Robert and Susanna also came into the office that day. Defs. Br., Ex. 14; DSUF ¶ 71; PSDF ¶ 71. But Plaintiff alleges that, when she reached the office, she did not see any of her coworkers except for Defendant Wawrzynek. PSDF ¶ 70.

While Plaintiff was in the office that day, Defendant Wawrzynek allegedly touched her hand and knee while showing her a computer file on her computer. PSDF ¶ 72. Plaintiff was working on a new project, and Defendant Wawrzynek offered to show her where the file was located on the computer. Pl.'s Br., Ex. W, Pl.'s Deposition at 73:3–19. Defendant Wawrzynek sat down close enough to Plaintiff that their knees touched "a few times." *Id.* at 74:22–75:4. Plaintiff alleges that when she moved away to create space between herself and Defendant Wawrzynek, Defendant Wawrzynek moved closer. *Id.* at 75:12–16. Plaintiff also alleges that Defendant placed his hand on Plaintiff's hand multiple times in order to guide her mouse to the file. *Id.* at 78:3–22. Each time their hands made contact, Plaintiff alleges, she pulled her hand away. *Id.*

Plaintiff alleges that, at the end of this day, Defendant Wawrzynek again invited Plaintiff to his home for dinner. *Id.* at 82:9–16. Plaintiff again declined his invitation. PSDF ¶ 72.

Plaintiff also alleges that Defendant Wawrzynek would stare at her breasts and body while talking to her and stared at her while she was in the gym on at least one occasion. PSDF ¶ 73. Plaintiff alleges that Defendant Wawrzynek would also sometimes place his bare feet on his desk in front of her when they would meet in his office, and that Defendant Wawrzynek once said that "things made in China are cheap" while looking in Plaintiff's direction as she was distributing gifts she had purchased from China for her coworkers. Pl.'s Statement of Additional Facts, ECF No. 85-1 ("PSAF"), ¶ 9; Compl. ¶ 31. Plaintiff was born in China and understood this comment to be sexual inuendo *Id.*

About two months after MLK Day, on March 11, 2016, Defendant Wawrzynek gave Plaintiff her first verbal warning. DSUF ¶ 41; PSDF ¶ 41. The warning noted that Plaintiff had failed to meet certain project deadlines. *Id.* Because of this warning, Defendant Wawrzynek required Plaintiff to attend regular performance coaching sessions with him. These sessions were sometimes one-on-one, but Plaintiff concedes that other supervisors were present at least some of the sessions. DSUF ¶¶ 75–76; PSDF ¶¶ 75–76.

After another seven months, on October 24, 2016, Defendant Wawrzynek gave Plaintiff a second verbal warning, this time for working from home without authorization. DSUF ¶ 44; PSDF ¶ 44. Plaintiff alleges that, around the same time, Defendant also blamed her for an accounting mistake that was committed by her colleague while not reprimanding that colleague. PSAF ¶ 4.[1]

Two months later, at the close of 2016, Defendant Wawrzynek gave Plaintiff a negative year-end review. DSUF ¶ 45; PSDF ¶ 45. He rated Plaintiff as "not meet[ing] a majority of the established performance objectives" and noted that Plaintiff had submitted projects late and with mistakes and had fallen short of expectations in other ways as well. DSUF ¶ 45; PSDF ¶ 45. Plaintiff emailed human relations an objection to this performance review, claiming that she had not missed certain deadlines and that Defendant Wawrzynek was unfairly singling her out for criticism. DSUF ¶ 46; PSDF ¶ 46.

Another three months later, in early March 2017, Defendant Wawrzynek issued a written warning to Plaintiff. DSUF ¶ 48; PSDF ¶ 48; Defs.' Br., Ex. 10 at p. 5 of 9. Plaintiff objected to

---

[1] Although Plaintiff contends in her statement of facts that Defendant Wawrzynek "berated" her, Plaintiff does not support this contention with evidence. PSAF ¶ 4 (citing to a portion of Plaintiff's deposition transcript that describes the incident without suggesting that Defendant Wawrzynek raised his voice at any point during their interaction). Accordingly, the Court will not credit this characterization pursuant to Federal Rule of Civil Procedure 56(c)(1) and (e).

this written warning as well and informed Defendant Wawrzynek, who in turn informed human relations, that she believed she was being treated unfairly because of her cultural differences. DSUF ¶ 48; PSDF ¶ 48; Defs.' Br., Ex. 23, Case Report: 2017-00191 at 1.

Later in the month of March 2017, Plaintiff made her first complaint to management about sexual harassment. She complained to Richard Gelfand, one of Defendant Wawrzynek's managers. DSUF ¶ 54; PSDF ¶ 54.[2] A few weeks later, in April 2017, Plaintiff spoke to another one of Defendant Wawrzynek's managers, Matthew Duffy. PSAF ¶ 7; Pl.'s Br., Ex. DD, Deposition of Matthew Duffy at 29:2–7. It is unclear whether Plaintiff mentioned her sexual harassment claims during her conversation with Duffy. PSAF ¶ 7 (stating only that Plaintiff discussed "her concerns" about Defendant Wawrzynek and citing to deposition testimony that does not elaborate upon what was discussed). But Plaintiff alleges that, during the conversation, Duffy told her to "move on and find another job." *Id.*

After another three months, on June 15, 2017, Defendant Wawrzynek issued a final warning to Plaintiff. DSUF ¶ 50; PSDF ¶ 50. The warning noted, among other things, that Plaintiff was still failing to meet deadlines. Defs. Br., Ex. 26. Plaintiff met with another one of Defendant Wawrzynek's supervisors, Carolyn Morache, that same day to discuss her objections to the warning and her concerns with Defendant Wawrzynek. PSAF ¶ 13–14. Plaintiff did not mention sexual harassment during this meeting. PSAF ¶ 13; *see also* Pl.'s Br., Ex. S.[3]

---

[2] Plaintiff's deposition testimony seems to suggest that Plaintiff did *not* tell Gelfand about her claims of sexual harassment. Pl.'s Br., Ex. W, Pl.'s Dep. at 102:3–7 ("Q: When did you first notify anyone at Voya of any sexual harassment claim, either written or verbally? A: Around close to July [2017], after that warning, performance warning."). And Plaintiff's June 20, 2017, email to management suggests that she had complained to Gelfand only about an instance in which Defendant Wawrzynek had raised his voice at her. Pl.'s Br., Ex. M at p. 5 of 6. But the parties seem to agree that Plaintiff discussed sexual harassment with Gelfand, so the Court will accept this fact as true for the purpose of this motion.

[3] In her statement of facts, Plaintiff suggests that she told Morache about her sexual harassment complaint during their meeting and cites to Morache's deposition for support. *See* PSAF ¶¶ 15–

On June 20, 2017, Plaintiff sent Morache and the chief accounting officer an email stating that Plaintiff had been sexually harassed by Defendant Wawrzynek. PSDF ¶ 14. Morache was surprised by Plaintiff's allegation and forwarded her complaint to the human relations. PSAF ¶ 15.[4] Human relations began an investigation the next day. DSUF ¶¶ 58–59; PSDF ¶¶ 58-–59 (denying without citing to any evidentiary support); *see also* Defs.' Br., Ex. 23, Case Report: 2017-00402.

A few weeks later, on July 5, 2017, Morache recommended Plaintiff's termination. PSAF ¶ 21. Plaintiff was terminated on July 18, 2017, about two weeks after Morache had recommended her termination. DSUF ¶ 52; PSDF ¶ 52.

### b.  Procedural History

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on December 27, 2017. DSUF ¶ 27; PSDF ¶ 27. Plaintiff obtained a Notice of Right to Sue and filed this lawsuit on May 16, 2019. *See* Pl.'s Mem. Law Opp. Defs.' Mot. Summ. J., ECF No. 85 ("Pl.'s Br."), at 2.

In her Second Amended Complaint, Plaintiff named Voya Financial, Inc., Voya Insurance and Annuity Company, and Mr. Wawrzynek as Defendants. *See* Compl. Voya Financial filed a motion to compel arbitration to enforce the arbitration agreement in its

---

16. But the deposition testimony to which Plaintiff cites states that Plaintiff informed Morache of her sexual harassment complaints in an email Plaintiff sent some days *after* their meeting. *See* Pl.'s Br., Ex. BB at 36:24–40:8; *see also id.* at 41:21–24 ("Q: Okay. Did you ever have any verbal conversations with Ms. Hou regarding her allegations of sexual harassment? A: No."). Accordingly, the Court will not credit Plaintiff's assertion pursuant to Federal Rule of Civil Procedure 56(c)(1) and (e).

[4] Plaintiff claims in her statement of facts that Morache "took no steps to initiate a sexual harassment investigation." PSAF ¶ 15. But the portion of Morache's deposition to which Plaintiff cites does not support this claim. In her deposition, Morache testified that she "immediately sent a note to HR" and "copied [the chief accounting officer]." Pl.'s Br., Ex. BB at 36:24–38:5. Accordingly, the Court will not credit Plaintiff's assertion pursuant to Federal Rule of Civil Procedure 56(c)(1) and (e).

employment contract with Plaintiff. *See* ECF No. 24. The Court granted that motion and dismissed Voya Financial from this suit. *See* ECF No. 42.

Plaintiff, Defendant Voya Insurance and Annuity Company and Defendant Wawrzynek proceeded to discovery. After the close of discovery, Defendants filed the motion for summary judgment that is presently before this Court. *See* ECF No. 81.

### III.   LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). And a fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage,

the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

## IV.     ANALYSIS

Plaintiff has plead two theories of discrimination against Defendants: retaliation and hostile work environment.[5] Defendants argue that the Court should enter summary judgment against Plaintiff on both these theories. Because the Court agrees, it need not reach Defendant Venerable Insurance and Annuity Company's argument that it cannot be held liable under principles of successor liability.

### a. Retaliation

Retaliation claims under Title VII and the PHRA follow the familiar *McDonnell Douglas* framework. To establish a prima facie case, a plaintiff must show that (1) the plaintiff engaged in activity protected by the statute; (2) the employer took an adverse employment action against the plaintiff; and (3) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–42 (3d Cir. 2006), *as amended* (Sept. 13, 2006). Once a plaintiff has established a prima facie case, the defendant must come forward with a legitimate, non-retaliatory reason for its adverse employment action. *Id.* at 342. If the employer does so, then the burden shifts back to the plaintiff to show both that the employer's offered reason is pretextual and that the employer's real reason was retaliatory. *Id.* To survive summary judgment at the pretext stage, the plaintiff

---

[5] Discrimination claims brought under the Title VII and the PHRA are governed by "essentially the same legal standards." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 n.8 (3d Cir. 2016). Accordingly, the Court will evaluate Plaintiff's claims under Title VII, but the same analysis applies to Plaintiff's PHRA claims.

must produce evidence that casts "substantial doubt" upon the employer's non-retaliatory explanation or that suggests an illegitimate factor was likely the motivating reason for the employer's adverse action. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

A plaintiff engages in protected activity when she opposes an employment practice that she reasonably believes, in good faith, is unlawful under Title VII. *Kengerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021). The plaintiff's act of opposition must, however, identify the employer and the specific practice she is opposing—general complaints of unfair treatment do not count as protected activity. *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). A plaintiff can register her opposition by making complaints to management. *Id.* And some district courts, including this one, have held that a plaintiff may also register her opposition by rejecting an overture that could reasonably constitute harassment under the statute. *Armbruster v. Epstein*, No. CIV. A. 96-CV-1059, 1996 WL 289991, at *3 (E.D. Pa. May 31, 1996) ("The court is persuaded that refusing sexual advances itself should be viewed as protected conduct."); *Burrell v. City Univ. of New York*, 894 F. Supp. 750, 761 (S.D.N.Y. 1995) (finding plaintiff's refusal to accede to a defendant's sexual advances).

An employment action is adverse when it could dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Unfair reprimands and negative performance reviews can be adverse actions so long as they are accompanied by "tangible job consequences." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 383 (7th Cir. 2020); *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008); *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001).

To determine whether there is a causal connection between protected activity and an adverse employment action, the Court must consider all the circumstances. *Carvalho-Grevious v.*

9

*Delaware State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017). The fact that an adverse action followed shortly after protected activity can support an inference of causation. *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000). But as the time between the protected activity and the adverse action grows longer, it offers less support to the inference. *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (finding three weeks insufficient to support an inference of causation); *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (finding two months and a week insufficient to support an inference of causation); *see also Rosati v. Colello*, 94 F. Supp. 3d 704, 717 (E.D. Pa. 2015) ("Days are suggestive; months are not."). Beyond timing, a plaintiff can also support an inference of causation by showing a pattern of antagonism, inconsistencies in the employer's explanation for its adverse action, or a discrepancy between the employer's treatment of the plaintiff as compared to similarly situated individuals who did not engage in protected activity. *Carvalho-Grevious*, 851 F.3d at 260; *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998).

  A plaintiff's burden to prove pretext accrues only after an employer has produced evidence suggesting it had a legitimate, non-retaliatory reason for its adverse action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). This burden is a "difficult" one that is more onerous than the plaintiff's burden at the prima facie stage. *Id.* at 765; *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 646 (3d Cir. 1998) ("[A]t the pretext stage . . . the factual inquiry into the alleged discriminatory motives of the employer [rises] to a new level of specificity."). But a plaintiff may use the same evidence it used to show causation to show that the employer's non-retaliatory reason for taking the action is pretextual. *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 262 (3d Cir. 2017).

Plaintiff took two types of action that could potentially constitute protected activity: rejecting Defendant Wawrzynek's invitations to dinner and complaining to management about his sexually harassing conduct. Plaintiff argues that her final rejection of Defendant Wawrzynek's dinner invitation is the critical one for her retaliation claim because it was at that point that Defendant Wawrzynek realized his romantic advances would not be accepted. This final rejection occurred on January 18, 2016. As for Plaintiff's complaints—only two can be considered protected activity, as only two involved allegations of sexual harassment. Plaintiff made the first of these two complaints to Richard Gelfand in early March of 2017 and made the second to Carolyn Morache and Landon Cobb on June 20, 2017. *See* DSUF ¶ 54 (conceding that Plaintiff complained about "sexual harassment/discrimination" during this meeting); DSUF ¶ 57 (conceding that Plaintiff alleged "incidents of sexual harassment" in her June 20, 2017 complaint).[6]

Defendants took two types of action that could be considered adverse employment action: terminating Plaintiff and giving Plaintiff warnings and negative performance reviews. Because these performance reviews and warnings ultimately formed the basis for Plaintiff's termination, a jury could find that they constituted adverse employment actions.

The difficulty in Plaintiff's claim, however, is that there is insufficient evidence from which a jury could infer a causal connection between Plaintiff's protected activities and Defendants' adverse employment actions.

---

[6] Plaintiff made her first complaint to Gelfand in October 2016, but this earlier complaint cannot be protected activity because it did not describe any sexual harassment and essentially amounted to a general complaint that she was being treated unfairly. *See* Pl.'s Br., Ex. O. Similarly, Plaintiff met with Carolyn Morache in the week preceding June 20, 2017, to discuss her grievances with Defendant Wawrzynek. But this meeting was not protected activity because Plaintiff has not produced any evidence showing that she discussed sexual harassment during this meeting. See Pl.'s Br., Ex. S.

11

Insofar as Plaintiff's rejection of Defendant Wawrzynek's dinner invitations was protected activity, Defendants' took their first adverse employment action against Plaintiff —a verbal warning—almost two months later. This timing is not short enough to support an inference of causality on its own. And Plaintiff offers no evidence suggesting that Defendant Wawrzynek's first verbal warning was factually unfounded. *See* PSDF ¶ 41 (citing only Plaintiff's deposition testimony that she believes Defendant Wawrzynek criticized her as punishment for rejecting his dinner invitations and not offering any support for that belief).

Indeed, this verbal warning, which concerned Plaintiff's missing deadlines, was consistent with warnings Plaintiff had received in her yearly reviews dating back to the beginning of her employment, including a review issued by a different manager. Defs.' Br., Ex. 19, 2014 Performance Review for Lifeng Hou (noting that Plaintiff had some issues with the "timeliness of posting entries"); Defs.' Br., Ex. 20, 2015 Performance Review for Lifeng Hou (noting that Plaintiff sometimes had to be "reminded to complete journal entries, which lead to missed deadlines"). And while Plaintiff argues that the series of escalating warnings and declining reviews represents a pattern of antagonism, the time gap between each warning and review undermines that argument. Indeed, about seven months lapsed between Plaintiff's first and second verbal warnings. An additional two months lapsed between her written warning and her negative performance review. And yet another six months lapsed between her negative review and her final warning.

Plaintiff also argues that a jury can infer a causal connection from the fact that she was singled out for discipline when similarly situated employees were not. Again, however, Plaintiff has produced almost no evidence supporting this inference. Plaintiff testified that her teammates, Suzanna and Robert, had jobs comparable to her own. Pl.'s Br., Ex. W, 97:20–98:2. Beyond her

12

statement that all three had "similar" jobs, however, Plaintiff has not produced any evidence that Suzanna's and Robert's duties were actually similar. Further, Plaintiff's only evidence that Suzanna and Robert were treated differently is Plaintiff's testimony that she had never seen them get criticized during a team meeting and Plaintiff's speculation that they had never been criticized because they continued to make mistakes. Pl.'s Br., Ex. W, 98:17–100:16. This is not specific or detailed enough comparator evidence to support an inference of a causal connection.

Plaintiff similarly fails to show a causal connection between her complaints to management about sexual harassment and her termination. Plaintiff was terminated about four months after she first complained to management about sexual harassment which is, again, too long a gap to support an inference of causal connectivity on its own. Plaintiff argues that another manager, Matt Duffy, told her to "move on and find another job" just a month later, but Plaintiff has not pointed to any evidence that Mr. Duffy actually knew about her complaints of sexual harassment. Pl.'s Br., Ex. W at 89:23–92:6. Indeed, Plaintiff's deposition testimony suggests that she had not yet told anyone about her sexual harassment complaints by the time she spoke to Mr. Duffy. *Id.* at 92:2–6 ("Q: My question was . . . she hadn't told anyone at Voya about the sexual harassment claims [by the time she spoke to Mr. Dufy]. A: No, not before I discussed with Duffy.").

Plaintiff complained of sexual harassment to managers again on June 20, 2017, and was recommended for termination just two weeks later. Viewed in a vacuum, the short timespan between her complaint and her termination might support an inference of causation. But uncontroverted evidence demonstrates that Plaintiff had already received a final warning by the time she made her complaint. This warning notified Plaintiff that she could be terminated if she failed to correct the issues identified in the warning. Defs. Br., Ex. 26, Lifeng Hou Final

13

Warning. And, as discussed above, the issues identified in the final warning—i.e. missed deadlines, meetings and updates—were consistent with the warnings and performance reviews Plaintiff had been receiving for years. When viewed in the context of all the evidence, then, the timespan between Plaintiff's second sexual harassment complaint and the recommendation of her termination cannot support an inference of causation.

Further, even if the evidence could support an inference of a causation, it would still fail to show that Defendants' non-retaliatory reason for terminating Plaintiff was pretextual. Defendants have met their burden under the *McDonnell Douglas* framework to come forward with a legitimate, non-retaliatory reason for terminating Plaintiff—namely, Plaintiff's track record of inadequate performance. Defendants have produced evidence supporting their non-retaliatory reason, including copies of Plaintiff's performance reviews and written warnings as well as emails among management and case reports composed by employee relations discussing Plaintiff's inadequate performance. Accordingly, the burden is upon Plaintiff to show that Defendants' non-retaliatory reason is pretextual or that Defendants were actually motivated by a retaliatory motive.

Here, Plaintiff comes forward with no such evidence. Indeed, Plaintiff's brief does not even address her burden at the pretext stage. The closest Plaintiff comes to an argument on the issue of pretext is in her statement of the facts, where she states that Carolyn Morache provided implausible descriptions of Plaintiff during her deposition. Plaintiff suggests that these deposition statements, taken upwards of four years after Morache recommended Plaintiff's termination, should cast doubt upon the reasons Morache provided for terminating Plaintiff at the time of the termination. Even accepting Plaintiff's characterization of Morache's deposition testimony and the inference Plaintiff asks the Court to draw from it, this is still too little evidence

to produce a genuine dispute as to whether Defendants' non-retaliatory reason for terminating Plaintiff was pretextual. Morache's deposition testimony does little to undermine the substantial record of performance reviews and warnings Plaintiff had received in the years preceding her termination—none of which were authored or issued by Morache.

Because Plaintiff has failed to produce sufficient evidence supporting a genuine dispute as to the issues of causation and pretext, the Court must grant summary judgment in favor of Defendants on Plaintiff's claims of retaliation under Title VII and the PHRA.

### b. Hostile Work Environment

To prevail on a hostile work environment theory of sexual discrimination, a plaintiff must prove (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) she was detrimentally affected by the discrimination; (4) the detrimental effect was objectively reasonable; and (5) the existence of respondeat superior liability. *Mandel v. M & Q Packing Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). Defendants argue that Plaintiff has failed to show a genuine dispute of fact as to whether the alleged discrimination was severe or pervasive or whether the detriment Plaintiff experienced was objectively reasonable. Because the Court agrees with Defendants' first argument, the Court does not reach the second.

Discriminatory conduct is "severe or pervasive" if it is significant enough to alter the conditions of an employee's employment. *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 215 (3d Cir. 2017). In applying this standard, courts must consider all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *Id.* But courts must also be careful not to transform Title VII into a "general civility code" for the workplace. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

In this case, viewing all the evidence and construing it in the light most favorable to Plaintiff, Plaintiff has shown that her direct manager stared at her breasts and body in the workplace, generally failed to respect her personal space, and subjected her to three unwelcome romantic overtures, one instance of sexual innuendo, and one instance of unwelcome physical contact.[7] Of course, Defendants deny this characterization of what happened and have produced substantial evidence to support their version of the facts. But Defendants' contradictory evidence, at the summary judgment stage, establishes only that a genuine dispute of fact remains as to accuracy of Plaintiff's narrative. Accordingly, the only question before this Court is whether Plaintiff's narrative, when fully credited, represents severe or pervasive discrimination as a matter of law.

Two of this Court's prior summary judgment decisions are particularly relevant to this case: *Willauer v. Riley Sales, Inc.*, 2009 WL 2959822, (E.D. Pa. Sept. 16, 2009) and *Seybert v. International Group, Inc.*, 2009 WL 72291, (E.D. Pa. Mar. 17, 2009).

In *Willauer*, the plaintiff had produced evidence showing that her manager had stared at her breasts, regularly commented on her appearance, once watched her change into a bathing suit at a company event, once written her name all over a piece of paper as though the manager were infatuated with the plaintiff, and once suggested that the plaintiff and the manager share a room on a company trip. 2009 WL 2959822 at *1. The Court concluded that these facts "at most" suggested a work environment in which "an individual who is attracted to another individual . . .

---

[7] Plaintiff does not argue that Defendants' criticisms, warnings and negative performance reviews were discriminatory acts that the Court should consider in evaluating the hostility of her work environment. *See* Pl.'s Br. at 18–22. Nor could Plaintiff make such an argument. The hostility in a plaintiff's workplace must result "because of" the plaintiff's sex to be actionable under Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). But, as discussed above, Plaintiff has failed to show a causal nexus between these critical reviews and her rejection of Defendant Wawrzynek's romantic overtures. And Plaintiff neither offers other evidence nor argues for another inference that would suggest these critical reviews were related to her sex.

made modest overtures to that fact." *Id.* at *7. The Court concluded that such a workplace was not severely or pervasively discriminatory as a matter of law and granted the defendant's motion for summary judgment on that issue. *Id.* at *6–*7.

In *Seybert*, by contrast, the plaintiff had produced evidence showing that her direct manager had not only stared at her breasts and once directed sexual innuendo at her but also berated her on three occasions and ignored and avoided her after she complained about his conduct. 2009 WL 72291 at *3–*5. The Court denied the defendant's motion for summary judgment, concluding that a jury could find these conditions to represent severe or pervasive discrimination.

Plaintiff's telling of the facts is closer to *Willauer* than it is to *Seybert*. As in *Willauer* and unlike in *Seybert*, there is no evidence in this case that Defendant Wawrzynek ever berated Plaintiff or froze her out of professional interactions. And while this case involves an instance of unwanted physical contact that *Seybert* did not, the evidence, even when construed in the light most favorable to Plaintiff, suggests that this contact was no more than a few moments of hand and knee grazing while Plaintiff and Defendant Wawrzynek shared a computer in a small cubicle. Defendant Wawrzynek could have shown better respect for Plaintiff's personal space. But this slight physical contact is not severe enough to move this case into the realm of *Seybert*. As in *Willauer*, the evidence in this case suggests at most that Defendant Wawrzynek developed an infatuation with Plaintiff and made modest overtures towards that end while also doing a poor job of respecting Plaintiff's personal space. These conditions are insufficiently severe or pervasive to support a hostile work environment claim under Title VII.

Because the discrimination in Plaintiff's workplace was not severe or pervasive as a matter of law, the Court must grant summary judgment in favor of Defendants on Plaintiff's hostile work environment claims under Title VII and the PHRA.

## V. CONCLUSION

Defendants have sustained their burden to show that no reasonable jury could find that Plaintiff's rejection of romantic overtures or complaints about sexual harassment were causally related to her poor performance reviews and ultimate termination. Accordingly, the Court grants summary judgment in favor of Defendants on Plaintiff's claims of retaliation under Title VII and the PHRA. Defendants have also sustained their burden to show that Plaintiff's workplace was not severely or pervasively discriminatory as a matter of law. Accordingly, the Court grants summary judgment in favor of Defendants on Plaintiff's hostile work environment claims under Title VII and the PHRA.

Because Plaintiff cannot prevail on her retaliation or hostile work environment claims, the Court must enter summary judgment against Plaintiff on her aiding and abetting claim under the PHRA as well. *Lombard v. Lassip, Inc.*, No. CV 17-964, 2017 WL 6367956, at *5 (E.D. Pa. Dec. 13, 2017) ("For liability to be imposed on an aiding and abetting theory . . . there must be a cognizable predicate offense.").

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge